UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>     v.<br><br>ADAM CHUNG-SHIAING WANG,<br><br>            Defendant. | No. C-04-4520 SC<br><br>ORDER RE: PLAINTIFF'S<br>MOTION TO STRIKE<br>DEFENDANT'S<br>AFFIRMATIVE DEFENSES |

   Plaintiff United States of America ("the Government") filed this action to revoke the naturalization of Defendant Adam Chung-Shiaing Wang ("Defendant").  On December 29, 2004, Defendant filed his Answer, which included three affirmative defenses.  The Government has now moved to strike Defendant's affirmative defenses pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

   First, the Court will briefly review the facts of the underlying matter.  Defendant became a naturalized citizen of the United States on May 24, 1995.  Complaint at 4.  During his application process, Defendant answered "No" to a written question regarding whether he had ever been "arrested, cited, charged, indicted, convicted, fined, or imprisoned" for a crime, excluding traffic violations.  Id. at 2.  He orally informed an investigator

that he had been fined for theft from a video store. Id. at 3. In fact, Defendant was convicted of grand theft in 1992 and sentenced to one year probation and a $250 fine. Id. at 4. In addition, Defendant was arrested for petty theft in 1994 for stealing $300 from his employer and sentenced to 10 days in jail, served over 10 consecutive Sundays, and three years probation. Id. Defendant alleges that his "rap sheet" was in the possession of the Government during his naturalization proceeding, but the Government failed to review it. Opposition at 2.

Turning to the Motion now before the Court, under Rule 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Sidney-Vinstein v. A.H. Robbins Co., 697 F.2d 880, 885 (9th Cir. 1983). However, "motions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Colaprico v. Sun Microsystems, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

As a preliminary matter, Defendant opposes the Motion on the grounds that it is untimely. With respect to the timing of a Rule 12(f) motion, the rule states, "Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after service of the pleading upon the party or upon the

2

1  court's own initiative at any time ..." Fed. R. Civ. P. 12(f).
2  Defendant asserts that because the Government filed the instant
3  Motion on April 19, 2005, which is more than 20 days after
4  Defendant filed his Answer on December 29, 2004, the Motion should
5  be denied.  The Court agrees that the Government has filed the
6  Motion late.  However, courts in other jurisdictions have held
7  that "a party has the right to challenge the legal sufficiency of
8  a defense at any time" and therefore a court can consider the
9  merits of an untimely motion to strike.  Oregon Laborers-Employers
10 Trust Funds v. Pacific Fence & Wire Co., 726 F. Supp. 786, 788 (D.
11 Or. 1989).  See also Estee Lauder, Inc. v. Fragrance Counter,
12 Inc., 189 F.R.D. 269, 271 (S.D.N.Y. 1999) ("Plaintiffs' delay,
13 however, presents no bar to considering the motion on its merits.
14 Rule 12(f) clearly permits a Court on its own initiative, at any
15 time, to strike ....  In effect, the Court's discretion renders the
16 twenty (20) day rule essentially unimportant." (internal citations
17 and quotations omitted)).  Thus, the Court will consider the
18 merits of the instant Motion.

19       Defendant raises three affirmative defenses in his Answer.
20 First, Defendant asserts, "Plaintiff waived any and all claims
21 that he may or may not have had by allowing nine years to lapse
22 before conducting a background check on defendant." Answer at 4.
23 Essentially, this assertion puts forth a statute of limitations
24 defense.  Section 1451, which controls this denaturalization
25 proceeding, makes no mention of any statute of limitations.  8
26 U.S.C. § 1451.  Furthermore, case law demonstrates conclusively
27 that the Government may institute a denaturalization proceeding at
28

3

any time regardless of how many years have passed since citizenship was granted to a defendant. Fedorenko v. United States, 449 U.S. 490 (1981) (upholding revocation of citizenship of a World War II concentration camp guard seven years after his naturalization); United States v. Szehinskyj, 277 F.3d 331 (3d Cir. 2002) (upholding revocation of citizenship of a World War II concentration camp guard four decades after his naturalization). Even though Defendant's crimes may not rise to the level of those in Fedorenko or Szehinsky, this Court has no authority to infer a statute of limitations under its equitable powers because "Congress alone has the constitutional authority to prescribe rules for naturalization." Fedorenko, 449 U.S. at 506. Based on this case law, this Court holds that there is no statute of limitations applicable to the underlying proceeding. Therefore, the Court grants the Motion with respect to the first affirmative defense.

Second, Defendant asserts that the Government must be estopped from bringing this claim against Defendant, stating, "The government had actual or constructive knowledge of plaintiff's alleged criminal background, yet proceeded to process [Defendant's][1] citizenship application." Answer at 4. The Government asserts that "equitable defenses such as laches, waiver and estoppel against the government are disfavored and are rarely successful." It is true that this Court's equitable powers are extremely limited, if not nonexistent, in the area of

---

[1] Defendant's Answer appears to mix up the labels "Plaintiff" and "Defendant" in his Second Affirmative Defense. Answer at 4.

naturalization.  See Fedorenko, 449 U.S. at 518 ("An alien who seeks political rights as a member of this Nation can rightfully obtain them only upon the terms and conditions specified by Congress.  Courts are without authority to sanction changes or modifications; their duty is rigidly to enforce the legislative will in respect of a matter so vital to the public welfare.").  However, a § 1451 denaturalization process strips a Defendant of American citizenship when naturalization was "illegally procured" or when the defendant procured naturalization "by concealment of a material fact or by willful misrepresentation."  8 U.S.C. § 1451.  Defendant's second affirmative defense suggests that Defendant did not conceal his criminal record.  Whether or not Defendant provided information on his criminal history during his naturalization proceeding is highly relevant.  As stated above, "motions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."  Colaprico, 758 F. Supp. at 1339.  Here, it is possible, perhaps even probable, that Defendant's second affirmative defense has a bearing on the underlying litigation.  Therefore, the Court denies the Motion with respect to the second affirmative defense.

Third, Defendant asserts, "As a third affirmative defense, defendant asserts that plaintiff's claim must be barred by the doctrine of latches [sic].  Plaintiff's [sic] unreasonably delayed brining [sic] action against defendant for nine years.  Because of this unreasonably [sic] delay, defendant's ability to mount an effective defense has been impaired."  Answer at 4.  However, the

5

1  Supreme Court has expressly rejected a laches defense in a
2  denaturalization proceeding. Costello v. United States, 365 U.S.
3  265, 283-84 (1961) ("Depriving him of his fraudulently acquired
4  privilege, even after the lapse of many years, is not so
5  unreasonable as to constitute a denial of due process.").
6  Therefore, the Court grants the Motion with respect to the third
7  affirmative defense.
8      The Court emphasizes to both parties that this Order is
9  concerned solely with the propriety of Defendant's affirmative
10 defenses and has no bearing on the merits of the underlying
11 proceeding.  Looking forward, "the Government carries a heavy
12 burden of proof in a proceeding to divest a naturalized citizen of
13 his citizenship." Fedorenko, 449 U.S. at 505 (internal citations
14 and quotations omitted).  "The evidence justifying revocation of
15 citizenship must be clear, unequivocal, and convincing and not
16 leave the issue in doubt." Id. (internal citations and quotations
17 omitted).  "At the same time ... there must be strict compliance
18 with all the congressionally imposed prerequisites to the
19 acquisition of citizenship.  Failure to comply with any of these
20 conditions renders the certificate of citizenship 'illegally
21 procured,' and naturalization that is unlawfully procured can be
22 set aside." Id. at 506.
23     At this time, the Court has considered only Plaintiff's
24 Motion to Strike Defendant's Affirmative Defenses.  For the
25 ///
26 ///
27 ///
28

6

reasons states above, the Court GRANTS the Motion to Strike with respect to the first and third affirmative defenses but DENIES the Motion with respect to the second affirmative defense.

IT IS SO ORDERED.

Dated: June  20 , 2005

                                             /s/ Samuel Conti
                                             UNITED STATES DISTRICT JUDGE