UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>   v.<br><br>ADAM CHUNG-SHIAING WANG,<br><br>           Defendant. | No. C-04-4520 SC<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I.  INTRODUCTION

Plaintiff United States of America ("the Government" or "Plaintiff") filed this action to revoke the naturalization of Defendant Adam Chung-Shiaing Wang ("Defendant"), alleging that his certificate of citizenship was illegally procured.  The Government now moves for partial summary judgment as to Counts I and II.  For the reasons contained herein, this Court hereby GRANTS Plaintiff's motion as to Counts I and II of the Complaint.  Defendant's certificate of citizenship is hereby CANCELLED and the order admitting him to citizenship is REVOKED and SET ASIDE.

## II.  BACKGROUND

Because this is a motion for summary judgment, the Court will regard the evidence of Defendant, as the non-moving party, as

1   true.  Therefore, the following is based on Defendant's
2   submissions to the Court.
3       The Immigration and Naturalization Service ("INS") approved
4   Defendant's application for citizenship on May 5, 1995.  Answer at
5   2.[1]  On his application, Defendant answered "No" to a written
6   question regarding whether he had ever been "arrested, cited,
7   charged, indicted, convicted, fined, or imprisoned" for a crime,
8   excluding traffic violations.  Defendant's Memorandum in Support
9   of Opposition to Motion for Summary Judgment at 2 ("Def's Mem.").[2]
10  He orally informed an investigator that he had been fined for
11  theft from a video store.  Id. at 2.  In fact, Defendant was
12  convicted of grand theft in 1992 and sentenced to one year
13  probation and a $250 fine.  Answer at 2.  In addition, Defendant
14  was arrested for petty theft in February 1994 for stealing $300
15  from his employer and sentenced to 10 days in jail, served over 10
16  consecutive Sundays, and three years probation.  Id. at 2.
17  Defendant was on probation when his application was approved.  Id.
18  at 3.
19      According to Defendant, his INS examiner, Wendy Plane
20  ("Plane"), had noted his criminal offenses during the interview,
21  but did not correct Defendant's form.  Def's Mem. at 2.  Plane, in
22  a deposition, conceded that it was possible she simply forgot.

---

[1] The INS has since merged into three Bureaus under the Department of Homeland Security.  The Court will use "INS" for purposes of convenience and because it was the INS which first approved Defendant's application.

[2] Defendant's sister actually filled out the application and checked the "No" box.  See Def's Mem. at 2.

2

Def's Mem., Ex. 1 at 23.

The Government filed a complaint to revoke Defendant's naturalization. In response to the Answer, the Government filed a motion under Federal Rule of Civil Procedure 12(f) to strike Defendant's affirmative defenses. The Court granted the motion as to two of the defenses and denied the motion as to one, allowing Defendant the opportunity to use the affirmative defense of estoppel.

The Government brings this motion for partial summary judgment on Counts I and II of the Complaint. In Count I, the Government alleges that Defendant, because of his criminal history, was not possessed of good character, and was therefore ineligible for naturalization. In Count II, the Government alleges that Defendant, because he was on parole when he applied for citizenship, was ineligible to be naturalized. The Government contends that because of these facts the Defendant's citizenship was illegally procured.

### III. **LEGAL STANDARD**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party.

3

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252-56 (1986). Summary judgment is therefore appropriate against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322-23. The more implausible the claim or defense asserted by the opposing party, the more persuasive its evidence must be to avoid summary judgment, see Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), but "[t]he evidence of the non-moving party is to be believed, and all justifiable inferences are to be drawn in its favor." Anderson, 477 U.S. at 255.

**IV. DISCUSSION**

Plaintiff contends that Defendant was ineligible to receive citizenship because he was not of good moral character and was on probation when he applied for citizenship. Defendant contends that the Government is estopped from revoking his citizenship. Specifically, Defendant contends that he "relied upon the approval, and more than nine years elapsed when he first learned that his citizenship must be revoked." Def's Mem. at 4.

The Constitution directly grants Congress legislative authority over matters of naturalization. U.S. CONST. art. I, § 8, cl. 4. The authority of the Federal Courts over these matters is tightly tethered by congressional statutes. The United States Supreme Court puts it thus:

> An alien who seeks political rights as a member of this Nation can rightfully obtain them only upon the terms and conditions specified by Congress. Courts are without

4

1  authority to sanction changes or modifications; their duty is
2  rigidly to enforce the legislative will in respect of a matter so vital to the public welfare.

3  United States v. Ginsberg, 243 U.S. 472, 474-475 (1917).

4  The Supreme Court, having said this, has also declared that
5  the "Government carries a heavy burden of proof in a proceeding to
6  divest a naturalized citizen of his citizenship." United States
7  v. Fedorenko, 449 U.S. 490, 505 (1981), citing Costello v. United
8  States, 365 U.S. 265, 269 (1961). "The evidence justifying
9  revocation of citizenship must be clear, unequivocal, and
10 convincing and not leave the issue in doubt." Id., citing
11 Schneiderman v. United States, 320 U.S. 118, 125 (1943).

12 "At the same time...there must be strict compliance with all
13 the congressionally imposed prerequisites to the acquisition of
14 citizenship. Failure to comply with any of these conditions
15 renders the certificate of citizenship 'illegally procured,' and
16 naturalization that is unlawfully procured can be set aside." Id.
17 at 506.

### A. Count I

An applicant for citizenship must be a person of "good moral character," as defined by statute. 8 U.S.C. §§ 1427(a) and (f)(3). An applicant shall not be regarded as such a person if he has been convicted, or admits to having committed, a "crime involving moral turpitude." 8 U.S.C. § 1182(a)(2)(A)(i)(I). Crimes of theft are presumed to involve moral turpitude. See Gutierrez-Chavez v. INS, 8 F.3d 26, 26 (9th Cir. 1993).

Defendant concedes that he was convicted of petty theft and

**United States District Court**
For the Northern District of California

grand theft.  Answer at 2.  Because this disqualifies him for being a person good character, Defendant was ineligible for citizenship when he applied for it.

### B.  Count II

Defendant concedes that his probation did not end until February 1997 and was thus on probation on the date his application was approved.  Id. at 3.

"An application will not be approved until after the probation, parole, or suspended sentence has been completed." 8 C.F.R. § 316.10(c)(1).  According to this regulation, the INS was without authority to grant citizenship to Defendant.

### C.  Equitable Estoppel

The doctrine of equitable estoppel applies against the government only if the government engages in "affirmative misconduct going beyond mere negligence."  Mukherjee v. INS, 793 F.2d 1006, 1008-1009 (9th Cir. 1986).  Furthermore, "estoppel will apply only where the government's wrongful act will cause a serious injustice and the public's interest will not suffer undue damage by the imposition of liability."  Id.[3]

---

[3] There are additional requirements for estoppel to apply. The party to be estopped must have "made a knowing false representation or concealment of material facts to a party ignorant of the facts, with the intention that the other party should rely

6

Defendant concedes that Plane "did not give this interview needed attention because she had to interview 23-25 persons every day, a high caseload for her." Def's Mem. at 3. Defendant also, rather incongruously, states that Plane's actions "suggest that she was incompetent and grossly negligent." Id. at 10.

The Court rejects this defense. The Court finds that, believing Defendant's evidence as true and drawing every favorable inference in his favor, Plane's actions do not rise to the level of affirmative misconduct. According to the facts the Court considered along with Defendant's own assertions, Plane's act was an oversight, possibly attributable to her having to interview roughly 25 persons per day. Id. Also, taking Defendant's evaluation of Plane's actions as true, gross negligence and incompetence are not sufficient to support a finding of affirmative misconduct, which requires that the Government "either intentionally or recklessly mislead[] the claimant." Michigan Express, Inc., v. United States, 374 F.3d 424, 427 (6th Cir. 2004).

Furthermore, the significance of the public interest cannot be ignored. The question of on whom and how citizenship is conferred is of the highest concern. The public has an interest in admitting to citizenship only those persons who are possessed

---

on it." Mukherjee, 793 F.2d at 1008, citing Jaa v. INS, 779 F.2d 569, 571 (9th Cir. 1986).

7

of good moral character.  Congress, in whose hands the Constitution has placed authority over this process, has seen fit to serve the public's interest by excluding persons who have unfitted themselves for citizenship by committing various crimes.  The INS is charged with the strict enforcement of congressional procedures and requirements in this area.  The Federal Courts, likewise, must strictly enforce these requirements.

The Court has evidence, as described above, that Defendant inaccurately answered a crucial question on his application form.  Though he may have been truthful at his interview, his failure to correctly and truthfully fill out his application form is a serious error.  Whatever the actions of the INS, the Court regards this act as a failure to comply with congressionally imposed prerequisites to the acquisition of citizenship, thus rendering his certificate of citizenship illegally procured.

A Federal Court, if it finds that citizenship was illegally procured, will revoke and set aside the order admitting that person to citizenship and cancel the certificate of citizenship. 8 U.S.C. § 1451(a).

The Court finds that, for the reasons listed above, Defendant's citizenship was illegally procured and, accordingly, orders that the order and certificate conferring citizenship be rescinded.

## V. CONCLUSION

For the reasons stated above, the Court GRANTS the Government's motion for summary judgment as to Counts I and II of the Complaint. Defendant's certificate of citizenship is CANCELLED and the order admitting him to citizenship is REVOKED and SET ASIDE.

IT IS SO ORDERED.

Dated: October 19, 2005

_____
UNITED STATES DISTRICT JUDGE